### R. A. Conn *v.* Cromwell Adair.

**Attorney and Client—Contract.**

> An attorney who purchases from his client a claim in litigation must show that he has dealt fairly with the client, and has taken no advantage of his knowledge of the facts or law in making his contract, or such contract will be canceled.

#### APPEAL FROM UNION CIRCUIT COURT.

#### December 18, 1877.

Opinion by Judge Pryor:

It is an established rule of law, and one followed by all courts of equity, that an attorney who purchases from his client a claim in litigation must show that he has dealt fairly with the client, and has taken no advantage of his knowledge of the facts or the law in making his contract. The chancellor always looks upon such contracts with suspicion, and unless there is the utmost good faith will not hesitate to cancel the transaction.

Applying this doctrine to the facts of this case, we must concur with the court below in adjudging that the appellant is not entitled

50

to the relief sought. The time the contract was made the appellant was over twenty-five years of age, and had been informed by the attorney that his claim was secure. In 1872 he had written to the appellant that his fee was $500, and swears that the services rendered were at the instance of the appellant and in pursuance of an agreement between them. He was employed not only to prosecute appellant's claim but to defeat, if possible, large claims that were pending against the estate. In his letter to the appellant, written in January, 1872, he apprised him of the fact that he had succeeded in defeating claims amounting in the aggregate to $10,000, and that he would advise the administrator to appeal on account of other improper allowances. In reply to the letter of the appellee the appellant did not contradict his right to make the charge for all the services rendered, but on the contrary said that "he would soon be down to look into the business of the estate, and that he wished to see the administrator's settlement with the court." Appellant was certainly taking much interest in the settlement of his father's estate. He had been informed that his own debt would not only be made, but was already secure, and when these facts are taken, in connection with Adair's positive statement as to the employment, there is but little doubt left upon the merits of the case, and we must regard it as established that appellee had been employed by appellant to defeat the large claims prosecuted against his father's estate.

At the time the claims of the guardian of appellant were presented against his father's estate in the year 1866 they amounted in the aggregate to $2,119.81. The accounts did not purport to bear interest of any kind, and were only verified and proven in such a manner as to recover the principal, and as presented authorized no judgment for interest, even by default.

At the time the actions were instituted the administrator had paid to Pearce $500 on their claims; yet the commissioner, by a singular character of calculation, reported that on the 9th of August, 1872, after deducting the $500, there was a balance still due appellant of $2,917.25. This was a plain mistake, and at the time the appellant sold this claim he was legally entitled to no more than $2,192.20, and this erroneous report was then not confirmed. The appellee paid to appellant the sum of $1,700 in money, and also receipted to him as attorney fee his demand in prosecuting this claim and in supervising the settlement of his father's estate amounting to $500. If this fee is proper, and we think it is from the proof, the appellant was paid the last cent to which he was legally entitled. The erroneous report

showed it is true that appellant was entitled to a much larger sum, but this report had not then been confirmed, and was subject to be corrected at any time. Adair, however, accepted the benefit of the mistake made by the commissioner, as no effort was made to correct it. Adair made nothing by his purchase in the event the mistake had been corrected, and not only so, but was risking the probability of an appeal and a reversal of the judgment for a mistake so palpable, and at the time this action was instituted by Conn, the right to an appeal still existed, and if Conn had recovered against Adair the latter would still have been liable for the amount to the administrator and could have been compelled to restore that portion of the money paid to him under an erroneous judgment. It was evidently understood that this claim to interest was at least doubtful, and this accounts for the statement of Adair that in law appellant's claim only amounted to $2,200. Conn, the appellant, says that the appellee always told him that his claim was doubtful; this statement, however, is refuted by the letter of the attorney to the appellant, in which he says to him the claim has been allowed as a preferred claim, and that he thought it absolutely secure. The appellant also inspected the record of the settlement, had arrived at an age when he was capable of acting for himself, was possessed of all the information connected with the case, has obtained every dollar to which he was in law entitled, and we see no reason for disturbing the judgment below.

The money he is seeking to recover is not and never was due him. Adair came into the possession of it by virtue of an erroneous judgment, which might have been reversed by the parties to whom money rightfully belonged at the very time this petition against Adair was dismissed by the court below. The appellant passed no title to Adair of this money in controversy by the transfer at the time it was made. The interest allowed was erroneous and the party not entitled to recover under these circumstances. The contract was made, and in the absence of any misrepresentation by the attorney, and when the client knew all the facts of the case, and when he in fact obtained all he was in law entitled to at the time the transfer was made, he has no right to complain. The judgment is therefore *affirmed*.

*Ken Chapeze, D. H. Hughes, for appellant.*
*W. P. D. Bush, for appellee.*